UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JIMMY D. SMITH,<br><br>    Plaintiff,<br> v.<br><br>LT. COX, LT. JOHN COLEMAN, C.O. RODRIGUEZ, INVESTIGATOR SCOTT, and INVESTIGATOR LOPEZ, in their individual and official capacities, and STATE OF CONNECTICUT, DEPARTMENT OF CORRECTIONS, BRIDGEPORT CORRECTIONAL CENTER,<br><br>    Defendants. | 3:08-CV-00509 (CSH) |

**MEMORANDUM OPINION AND ORDER**

HAIGHT, Senior District Judge:

**I.    Background**

On April 4, 2008, Plaintiff Jimmy D. Smith ("Smith") filed a complaint [doc. #1] in this Court under 42 U.S.C. § 1983, alleging several violations of his federal rights by persons acting under color of state law. Smith's claims were summarized in this Court's Initial Review Order dated April 23, 2008 [doc. #4] (Droney, J.) as follows:

> Plaintiff alleges that, on February 3, 2008, while incarcerated at Bridgeport Correctional Center as a pretrial detainee, he was assaulted by another inmate. Although he did not fight back, he received a disciplinary report and was sent to restrictive housing. Plaintiff alleges that he was handcuffed tightly in retaliation for exercising his First Amendment right to question why he was being handcuffed. Plaintiff also alleges that he was denied medical attention for injuries suffered in the assault. Plaintiff asserts claims for denial of his rights to equal protection, due process, and adequate medical care and failure to institute charges against the inmate who assaulted him, and for retaliation.

> Pursuant to its review under 28 U.S.C. § 1915A, the court concludes that the case should proceed on the claims of denial of due process, denial of equal protection, denial of medical care and retaliation. Plaintiff's claim that the defendants refused to permit him to press charges against the other inmate is dismissed.

IRO at 2. The Court ordered the Clerk to circulate the complaint to all defendants along with waivers of service of process and ordered that "[d]efendants shall file their response to the complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this order."

In other words, defendants were required to answer or move to dismiss the complaint on or before July 2, 2008.[1] They did not. Indeed, the Connecticut Attorney General's office did not even enter an appearance on their behalf until July 3, 2008, one day after the time for them to answer had expired.

After two more months of inactivity, Smith moved on September 11, 2008 for the Clerk to issue an entry of default pursuant to Fed. R. Civ. P. 55(a) [doc. #14], which the Clerk did on September 19, 2008 [doc. #16]. This matter now comes before the Court on Smith's October 2, 2008 Motion for Default Judgment under Rule 55(b) [doc. #20].

On October 14, 2008 — a full 104 days after the date by which they had been ordered to respond — defendants made their first filings in this case,[2] opposing Smith's Motion for Default Judgment [doc. #21] on the grounds that it was mooted by the answer they purported to file

---

[1] The defendants, in their individual capacities, all signed and promptly returned waivers of service of process, no later than May 7, 2008. The Connecticut Attorney General's office was served with process on behalf of all defendants, in their official capacities, on May 15, 2008.

[2] These papers are dated Thursday, October 9, 2008, but the docket reflects that they were not filed with the Court until Tuesday, October 14, 2008, the first business day after the Columbus Day holiday.

simultaneously with their Opposition [doc. #22].

## II. Discussion

### A. The Defendants' Opposition Is Insufficient as a Matter of Law

Under the Federal Rules of Civil Procedure, if any particular deadline has not yet expired, the court may extend that deadline *sua sponte*. But once the time has expired during which an act may or must be done, the court may enlarge that time only "on motion made." Fed. R. Civ. P. 6(b)(1)(A)-(B); *see also Sony Corp. v. Elm State Electronics, Inc.* 800 F.2d 317, 319 (2d Cir. 1986) ("[A] defendant who has missed a filing deadline *must move the court* to enlarge the time for filing and must demonstrate that the failure to file was the result of 'excusable neglect.'" (emphasis added)). No such motion has been made in this case.

Although a party is technically in default as soon as he or she fails to file a timely answer or other defense, the motion for an entry of default, and the entry of the default itself, serve an important function in the administration of justice. By docketing an entry of default, the Clerk in effect fires a warning shot across the defaulting party's bow, placing the party on notice that further silence comes at the peril of a default judgment. This helps ensure that parties with meritorious claims or defenses are given every possible opportunity to be heard on those merits.

But this excess of caution comes with a price. Under Rule 55(c), the defaulting party bears a heavier burden once the default has been noted — the party must convince the court that "good cause" exists to set aside the default and allow the case to proceed.

In assessing "good cause," the Second Circuit has said the "widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*,

10 F.3d 90, 96 (2d Cir. 1993).³  The court must weigh and balance each of the relevant factors in making its determination.  *See id.* at 97.  The ultimate determination is left to the sound discretion of the district court, "because it is in the best position to assess the individual circumstances . . . and to evaluate the credibility and good faith of the parties," but there is a preference for resolving disputes on the merits, and doubts should generally be resolved in favor of the defaulting party.  *Enron Oil*, 10 F.3d at 95-96.

In this case, the defendants have yet to make any motion or showing.  The farthest they have gone is to blithely file a barebones, untimely answer, and to oppose the Smith's Motion for Default Judgment on the grounds that they have done so.  I decline to construe that opposition as a motion to set aside the entry of default, in part because it makes no showing at all, let alone the "good cause" that the law requires.⁴  If defendants cannot make such a motion and showing within fourteen days, I see no reason to deny Smith's Motion for Default Judgment.  I will reserve decision on Smith's motion until that time.

      B.        The Insufficiency of the Proposed Answer

Assuming the defendants move this Court to set aside their default, one of the key considerations under *Enron Oil* will be the relative merit of their proffered defenses, and they "must present some evidence beyond conclusory denials to support [their] defense."  *Enron Oil*,

---

³ Courts may also consider other "relevant equitable factors," such as whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Id.*

⁴ Defendants' opposition also fails to include a memorandum of law.  Under Local R. Civ. P. 7(a)(1), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."

10 F.3d at 98.  Defendants' untimely answer does not even *allege* evidence that could establish the existence of such meritorious defenses.  Indeed, that pleading falls short of even the basic requirements in Fed. R. Civ. P. 11(b), under which all representations to the court amount to a certification that the factual contentions or denials are made "to the best of the [attorney's] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . ." (emphasis added).

The answer that defendants proposed to file does not pass muster under Rule 11(b).  After admitting that this Court has jurisdiction to hear these claims, the proposed answer denies "knowledge or information sufficient to form a belief" for approximately twenty of Smith's most basic factual contentions — including contentions which are substantially corroborated by documentary evidence which Smith attached to his complaint.

For example, in paragraph 4 of his Complaint, Smith makes the basic allegation that "Defendant Lt. Cox was a supervisor at B.C.C."  Paragraph 4 of the proposed answer denied information or knowledge sufficient to form a belief regarding this allegation.  It stretches credibility that the defendants, who include among their number Lt. Cox, lack sufficient knowledge or information to form a belief regarding the nature of Lt. Cox's employment.  A failure by counsel for defendants to consult his own clients is bad enough, but the answer's denial of knowledge or information is all the more problematic in light of the documents *attached to the complaint*, such as the "Disciplinary Report" dated February 3, 2008 that purports to have been signed by Lt. Cox himself and in which Lt. Cox appears to confirm that he is the "Custody Supervisor / Unit Manager" who reviewed the report at "Bridgeport CCC."

Similar deficiencies persist throughout the defendants' answer, the totality of which

convinces me that defense counsel could not possibly have conducted "an inquiry reasonable under the circumstances" before filing that document.

### III.     Conclusion

For the foregoing reasons, defendants have not shown why this Court should overlook their default.  Defendants' Answer [doc. #22] is **STRICKEN** as untimely and deficient under Rule 11(b).  Because defendants may nevertheless have meritorious defenses, I will permit them to cross-move the Court to set aside their default and submit an answer, but they must do so within 14 days from the date of this Memorandum Opinion and Order, on or before November 24, 2008.  Decision on Smith's Motion for Default Judgment [doc. #20] is **RESERVED** until 14 days from the date of this Memorandum Opinion and Order, or until such time as the parties have briefed and the Court has ruled on any motion to set aside the entry of default as defendants may make.  Otherwise, Smith's Motion for Default Judgment [doc. #20] will be granted and the case will proceed to an inquest into the proper amount of damages.

It is SO ORDERED.

Dated: New Haven, Connecticut
November 10, 2008

/s/ *Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge